UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

OPTIGEN, LLC,

                             **Plaintiff,**

     v.                                       5:10-CV-940
                                                (FJS/DEP)

ANIMAL GENETICS, INC.,

                             **Defendant.**
_____

**APPEARANCES**                                   **OF COUNSEL**

**HODGSON RUSS LLP**                   **ROBERT J. LANE, JR., ESQ.**
The Guaranty Building                    **JODYANN GALVIN, ESQ.**
140 Pearl Street, Suite 100             **MELISSA N. SUBJECK, ESQ.**
Buffalo, New York 14202-4040
Attorneys for Plaintiff

**ROGERS IP GROUP**                      **JAMES L. ROGERS, ESQ.**
Church Street Station
P.O. Box 3115
New York, New York 10008-3115
Attorneys for Defendant

**ALLEN D. BRUFSKY, PA**               **ALLEN D. BRUFSKY, ESQ.**
475 Galleon Drive
Naples, Florida 34102
Attorneys for Defendant


**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Currently before the Court is Defendant's motion for judgment on the pleadings as to Counts One and Two of Plaintiff's complaint, which allege patent infringement and unfair competition, respectively. Defendant also seeks sanctions against Plaintiff pursuant to Rule 11(c)(3) of the Federal Rules of Civil Procedure.

**II. BACKGROUND**

This case arises from a dispute regarding the patents for a method of testing Progressive Rod-Cone Disease ("PRCD"), which is a hereditary retinal disease that leads to blindness in dogs. *See* Complaint at ¶ 6. The patents at issue concern methods for identifying whether a dog is a genetic carrier of PRCD. *See id*. at ¶¶ 7-8. Plaintiff is the exclusive licensee of United States Patent No. 5,804,388 (the "388 patent"), entitled "Chromosome 9 and Progressive Rod-Cone Degeneration Disease Genetic Markers and Assays." *See id*. at ¶ 7. Cornell Research Foundation, Inc. is the assignee of the 388 patent. *See id*. Plaintiff is also the exclusive licensee of United States Patent No. 7,312,037 (the "037 patent"), entitled "Identification of the Gene and Mutation Responsible for Progressive Rod-Cone Degeneration in Dog and a Method for Testing Same." *See id*. ¶ 8. Cornell Research Foundation, Inc. is the assignee of the 037 patent. *See id*.

Plaintiff is a limited liability company organized and existing under the laws of the State of New York, and it maintains its principal place of business in Ithaca, New York. *See* Complaint at ¶ 1. Defendant is a corporation organized and existing under the laws of the State of Florida, and it

maintains a place of business in Tallahassee, Florida. *See id.* at ¶ 3. Plaintiff's business involves testing for inherited diseases in dogs through DNA-based means. *See id.* at ¶ 2. Defendant offers services related to testing for genetic disorders in horses and dogs; these services include testing for PRCD. *See id.* at ¶ 10.

When customers order a genetic test, Defendant sends them a kit to obtain a DNA sample from their dog; after collecting the samples, the customers mail them to Defendant. *See* Complaint ¶¶ 12-13. Defendant then notifies the customers of the test results by mail.[1] *See id.* at ¶ 15; Dkt. No. 9 at 2.

Plaintiff's first cause of action is for patent infringement and inducing infringement. *See* Complaint at ¶ 21. Plaintiff alleges that Defendant made, sold, offered for sale, and/or used testing methods for PRCD in a manner that infringed on the 388 and 037 patents. *See id.* Plaintiff further alleges that Defendant knowingly and willfully induced its customers to infringe the 388 and 037 patents. *See id.* at ¶¶ 22-23.

Plaintiff's second cause of action is for unfair competition. *See* Complaint at ¶ 26. Plaintiff alleges that Defendant competes with Plaintiff as a provider of DNA-based diagnostic services for inherited diseases in dogs. *See id.* Plaintiff argues that, by offering these services without authorization, Defendant willfully misappropriates Plaintiff's intellectual property. *See id.*

On December 3, 2010, Defendant filed the pending motion for judgment on the pleadings against Plaintiff, alleging that Plaintiff's complaint could not support a claim for patent infringement or for unfair competition. *See* Dkt. No. 17. Plaintiff filed a memorandum of law in opposition to

---

[1] Plaintiff alleged that Defendant notified its customers via email as well. *See* Complaint at ¶ 15. Defendant denied this in its Answer. *See* Dkt. No. 9 at 2.

that motion on December 28, 2010. *See* Dkt. No. 20. Defendant filed a reply in further support of its motion on January 3, 2011. *See* Dkt. No. 23.

On March 8, 2011, Judge Suddaby issued a Memorandum-Decision and Order regarding a defense motion for summary judgment in a companion case to the instant one, *Optigen, LLC v. Int'l Genetics, Inc.*, No. 5:09-CV-6 (N.D.N.Y. Mar. 8, 2011) (the "*InGen* case"). The companion case was factually similar,[2] and Defendant therefore requested the opportunity for both Plaintiff and Defendant to file supplemental briefs commenting on the *InGen* ruling and its potential applicability to this case. *See* Dkt. No. 28. The Court granted that request. Defendant submitted its supplemental memorandum of law on March 24, 2011. *See* Dkt. No. 30.[3] Plaintiff submitted its supplemental memorandum of law on March 25, 2011. *See* Dkt. No. 31. Defendant submitted a reply to Plaintiff's memorandum on April 2, 2011, and sent a corrected version of that reply later the same day. *See* Dkt. Nos. 32, 33. Plaintiff filed a letter brief in response to Defendant's reply on April 4, 2011. *See* Dkt. No 34.

---

[2] In the *InGen* case, Plaintiff Optigen sued Defendant InGen over its use of the same patents at issue in the instant case. Optigen brought the suit under § 271(a), (b), and (f). InGen predicated its defense on the fact that some of its operations were located outside the United States (in Bermuda); and, as a result, it could not sell or offer to sell under § 271(a). InGen further stated that it did not induce its customers to infringe on Optigen's patents under § 271(b) and that § 271(f) did not apply to method claims such as the one at issue. Judge Suddaby granted InGen's motion for summary judgment with respect to Optigen's claims under § 271(b) and (f).

[3] Attorney Allen D. Brufsky submitted this memorandum, and a subsequent reply. *See* Dkt. Nos. 32, 33. After these submissions, the Court became aware that Mr. Brufsky did not disclose certain pertinent information on his application to practice in this District. As a consequence, the Court referred the matter of Mr. Brufsky's admission to and standing in this District to Chief Judge Norman A. Mordue. Pending Judge Mordue's findings, the Court is considering striking Mr. Brufsky's submissions in this case, and it has not relied on them in this Memorandum-Decision and Order.

At oral argument on April 12, 2011, Plaintiff conceded that the Federal Circuit's decision in *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348 (Fed. Cir. 2009), governed its § 271(f) claim in this case.  In *Cardiac*, the Federal Circuit held that, for a defendant to infringe on a method patent under § 271(f), the defendant must perform all steps of that method within the United States.  Since Defendant performs some testing outside the United States, Plaintiff withdrew its § 271(f) claim, pursuant to *Cardiac*.

## III. DISCUSSION

**A.    Standard for a 12(c) motion**

It is well settled that "[t]he standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (citations omitted).  The only "modest difference between Rule 12(c) and Rule 12(b)(6) motions" is that Rule 12(c) motions "implicate[ ] the pleadings as a whole." *Aponte-Torres v. Univ. of Puerto Rico*, 445 F.3d 50, 54-55 (1st Cir. 2006) (citation omitted).  The function of a motion for judgment on the pleadings is to evaluate the legal feasibility of the complaint, not to weigh the evidence that might be offered to support the plaintiff's claims.  *See Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quotation omitted).  Consequently, to survive a 12(c) motion, the complaint must contain facts sufficient to """state a claim to relief that is plausible on its face.""" *Masonic Ass'n of Utica NY v. West Am. Ins. Co.*, No. 6:08-cv-00552, 2010 WL 1223177, *2 (N.D.N.Y. Mar. 30, 2010) (quoting *Ashcroft v. Iqbal*, --- U.S. ---, ---, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.

Ed. 2d 929 (2007))). In evaluating the complaint, the court "'must accept the facts alleged in the complaint as true and construe all reasonable inferences in [the moving party's] favor.'" *Hasbrouk v. Arrow Fin. Servs. LLC*, No. 1:09-cv-748, 2010 WL 1257885, *1 (N.D.N.Y. Mar. 26, 2010) (quoting *Fowlkes v. Adamec*, 432 F.3d 90, 95 (2d Cir. 2005)).

**B.     Plaintiff's patent infringement claims under 35 U.S.C. § 271(a) and (b)**

*1. 35 U.S.C. § 271(a)*

In order "[t]o state a claim for patent infringement, a plaintiff need only plead facts sufficient to place the defendant on notice of the asserted claim and to ensure that the defendant has adequate knowledge of the facts alleged in order to reasonably form a response." *Home & Nature Inc. v. Sherman Specialty Co., Inc.*, 322 F. Supp. 2d 260, 265 (E.D.N.Y. 2004) (citation omitted). "A complaint for patent infringement satisfies [these] requirements, . . . when the plaintiff: (1) alleges ownership of the asserted patent, (2) names each individual defendant, (3) cites the patent that is allegedly infringed, (4) describes the manner in which the defendants allegedly infringe, and (5) identifies the specific sections of the patent law invoked." *Id.* (citation omitted).

The elements of patent infringement under § 271(a)[4] that the patent holder must establish are as follows: "that the accused infringer made, used, offered to sell, sold, or imported the patented invention within the United States during the term of the patent, and that he or she did so without authority." *Tailored Lighting, Inc. v. Osram Sylvania Prods., Inc.*, 713 F. Supp. 2d 184, 186 (W.D.N.Y. 2010) (citation omitted). Generally, courts find patent infringement where "'each

---

[4] Section 271(a) states that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a).

properly construed claim element reads on the accused product or process.'" *Id*. (quoting Herbert F. Schwartz, *Patent Law and Practice* 167 (5th ed. 2006)).  In this case, Plaintiff has sufficiently alleged the elements of a claim for patent infringement under § 271(a).  Plaintiff's complaint alleges ownership of the 388 patent and the 037 patent, identifies the individual Defendant, states its belief that Defendant has infringed its patents, describes Defendant's procedure for testing for PRCD, and identifies § 271 as the specific section of the patent law that Defendant has allegedly violated.  *See generally*, Complaint.  Plaintiff's complaint also alleges that Defendant used, offered to sell, sold, and/or imported its method for PRCD testing and did so without its permission.  *See id*. at ¶¶ 10-25.

Moreover, Plaintiff has alleged facts that indicate that Defendant used, sold, and/or offered to sell Plaintiff's method for PRCD testing in the United States.  Defendant is a Florida corporation that maintains a place of business in Florida.  *See* Complaint at ¶ 3.  Defendant advertises its testing services on its website, which is accessible to customers in the United States.  *See id*. at ¶¶ 16-17.  Defendant has, in fact, sold its testing services to customers in the United States.  *See id*. at ¶ 18.

In its memorandum in support of its 12(c) motion, Defendant cites *Bayer AG v. Housey Pharm. Inc.*, 340 F.3d 1367 (Fed. Cir. 2003), for the proposition that, for the sale or offer of the sale of a product imported into the United States to constitute patent infringement, the patent must concern a physical article and not a method or process.  *See* Dkt. No. 17, Exhibit "1" attached thereto, at 7.  Defendant contends that it imported not a product, but data, in the form of PRCD test results, into the United States.  *See id*. at 7-8.  However, Defendant's reliance on *Bayer* is misplaced because *Bayer* only states that an infringed-upon patent must be a physical article for the purposes of § 271(g).  *See Bayer*, 340 F.3d at 1368.  It does not discuss § 271(a) at all.  In fact, the D.C. Circuit has held that the sale of a method can constitute patent infringement under § 271(a).  *See*

*CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 667 F. Supp. 2d 29, 37 (D.C. Cir. 2009). Moreover, "'[t]he use of a claimed system under section 271(a) is the place at which the system as a whole is put into service, i.e., the place where control of the system is exercised and beneficial use of the system obtained.'" *Id.* at 33 (quoting [*NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282,] 1317 [(Fed. Cir. 2005)]). Here, Plaintiff has adduced information indicating that Defendant exercises control of the system from its Florida office and that customers inside the United States benefit from Defendant's use of the system.

Accordingly, the Court finds that Plaintiff has alleged sufficient facts to state a plausible claim for patent infringement under § 271(a) and denies Defendant's motion for judgment on the pleadings with respect to this claim.

### *2. 35 U.S.C. § 271(b)*

Section 271(b)[5] labels those who "actively induce[] infringement of a patent" as infringers and imposes liability on them. 35 U.S.C. § 271(b). To establish a § 271(b) claim, a patent holder must demonstrate that, "'once the defendant knew of the patent, it "actively and knowingly aid[ed] and abett[ed] another's direct infringement."'" *Bayer Schera Pharma AG v. Sandoz, Inc.*, 741 F. Supp. 2d 541, 547 (S.D.N.Y. 2010) (quotation omitted). However, "'[i]n order to succeed on a claim of inducement, the patentee must show, first that there has been direct infringement,' and 'second, that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement.'" *Optigen LLC v. Int'l Genetics, Inc.*, No. 5:09-CV-6, Dkt. No.

---

[5] Section 271(b) states that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b).

181 at 22 (quoting *Cross-Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312 (Fed. Cir. 2005)) (other quotation marks omitted). Regarding the intent requirement, the Federal Circuit has ruled that a plaintiff must allege "more than just intent to cause the acts that produce direct infringement." *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006). In particular, "the inducer must have an affirmative intent to cause direct infringement." *Id.* Consequently, "inducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *Id.* (citing [*MGM Studios, Inc. v.*] *Grokster, Ltd.*, [545 U.S. 913, 936-37,] 125 S. Ct. at 2780 [2005]) (other citation omitted).

Plaintiff contends that Defendant was on notice of Plaintiff's patents because such knowledge could be easily determined through an internet search. *See* Complaint at ¶ 19. It is plausible that, as Plaintiff argues, Defendant knew of these patents while it was still testing for PRCD and advertising those tests on its website.

With regard to the specific intent element of this claim, no record exists yet from which the Plaintiff could draw information to support its contention that Defendant acted with the specific intent to encourage others to infringe. Nevertheless, Plaintiff's allegations that Defendant knew of Plaintiff's patents, but continued to sell PRCD tests, presents a plausible § 271(b) claim. *See SEB, S.A. v. Montgomery Ward & Co., Inc.*, 412 F. Supp. 2d 336, 344 (S.D.N.Y. 2006) (holding that a defendant violates § 271(b) where it "knows about a patent yet continues to sell the infringing product" (citations omitted)). In the *InGen* case, the lack of record evidence corroborating the specific intent portion of the plaintiff's § 271(b) claim was sufficient for the court (Suddaby, J.) to grant Defendant's motion for summary judgment regarding this issue. *See Int'l Genetics, Inc.*, No.

5:09-CV-6, *23 (N.D.N.Y. Mar. 8, 2011). However, the present motion in this case is a motion for judgment on the pleadings, wherein the Court's function is to evaluate the legal feasibility, i.e., plausibility of the claim, and not a motion for summary judgment, where the Court must determine whether an issue of material fact exists and the plaintiff must come forward with evidence to support his claim. Consequently, Plaintiff's § 271(b) claim survives, despite its scant factual basis. After the parties in this action complete discovery, the Court can determine, on a subsequent motion for summary judgment, if evidence exists in the record to demonstrate Defendant's specific intent as § 271(b) contemplates.

Accordingly, the Court denies Defendant's motion for judgment on the pleadings with respect to this claim.

### C.     Plaintiff's unfair competition claim

Courts have found that the "'gravamen of a claim of unfair competition is the bad faith misappropriation of a commercial advantage belonging to another by infringement or dilution of a trademark or trade name or by exploitation of proprietary information or trade secrets.'" *Opals on Ice Lingerie v. BodyLines, Inc.*, 425 F. Supp. 2d 286, 295 (E.D.N.Y. 2004) (quotation and citation omitted); *see also Roy Export Co. Establishment v. Columbia Broad. Sys., Inc.*, 672 F.2d 1095, 1105 (2d Cir. 1982) (holding that "[a]n unfair competition claim involving misappropriation usually concerns the taking and use of the plaintiff's property to compete against the plaintiff's own use of the same property"). Consequently, a plaintiff will successfully state a claim for unfair competition where it alleges facts that indicate that the defendant "appropriate[d] the 'skill, expenditures and labor' of a plaintiff to gain a commercial advantage." *Capitol Records, Inc. v. Wings Digital Corp.*,

218 F. Supp. 2d 280, 286 (E.D.N.Y. 2002) (quotation and other citation omitted).

The Second Circuit has held that, "[a]s a general rule, in a case involving an allegation that defendant has engaged in illegal activity, a court's power to hear and decide the matter is not terminated when defendant voluntarily ceases its illegal conduct. That is, such cessation does not necessarily make a case moot." *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 202 (2d Cir. 1999) (citations omitted). A case may still be moot where "'(1) it can be said with assurance that there is no reasonable expectation . . . that the alleged violation will recur, . . . and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Id.* (quotation omitted). Therefore, even where a defendant stops performing acts of infringement, "'unless the evidence is very persuasive that future infringement will not take place,'" courts may grant injunctions preventing a defendant from engaging in infringing acts. *Bellehumeur v. Propuck, Inc.*, No. 01 cv 4563, 2008 WL 746610, *2 (E.D.N.Y. Mar. 19, 2008) (quotation omitted) (issuing injunction in patent infringement case).[6]

In this case, Plaintiff's complaint alleges facts that state a plausible claim for unfair competition. Plaintiff alleges that Defendant appropriated Plaintiff's testing methods and used them to its economic gain. Based on the language from *Opals on Ice Lingerie*, testing methods fall under the category of proprietary information or trade secrets.

Moreover, Plaintiff's unfair competition claim does not appear to be moot. Although Defendant voluntarily stopped its allegedly infringing conduct, there is no evidence in the record to

---

[6] In addition, even if a court finds that a claim for injunctive relief is moot, that finding does not necessarily moot claims for monetary relief. *See Stokes v. Vill. of Wurtsboro*, 818 F.2d 4, 6 (2d Cir. 1987) (citing *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 154 n.3, 98 S.Ct. 1729, 1732, 56 L. Ed. 2d. 185 (1978); *Ellis v. Blum*, 643 F.2d 68 82-83 (2d Cir. 1981)) (quotation omitted).

indicate that Defendant will not infringe in the future. *See Desiderio*, 191 F.3d at 202 (holding that there is no reasonable expectation that Defendant will not engage in the complained-of behavior, even where it voluntarily changes its internal policies); *see also Los Angeles Cnty. v. Davis*, 440 U.S. 625, 631-32 (1979) (holding that a reasonable expectation of non-recurrence existed where a county used a hiring practice only in one prior emergency situation, had regarded it as unsatisfactory even before the commencement of litigation, and had developed a better hiring system since the commencement of litigation). Defendant's statement on its website announcing cessation of PRCD testing and acknowledging the existence of the 388 and 037 patents contained no assurances that Defendant would not conduct PRCD testing at a later point. *See* Dkt. No. 20 at 9. Further, interim events have not destroyed the possibility of a recurrence of Defendant's behavior. As a result, the Court finds that Plaintiff's claims are not moot and that Plaintiff can continue to pursue relief.

### D.     Defendant's motion for sanctions pursuant to Rule 11(c)(3)

Defendant claims that Plaintiff's complaint is frivolous and requests that the Court issue sanctions against Plaintiff for          not conducting due diligence to determine the full facts of this case before filing its complaint.[7] *See* Dkt. No. 17, Exhibit "1" attached thereto, at 9. Defendant

---

[7] In its supplemental memorandum, Defendant also made ethics claims under the New York Code of Professional Responsibility. *See* Dkt. No. 30 at 11-12. Specifically, Defendant claims that Plaintiff's ordering of PRCD services from Defendant was a "contrived sale" designed to trap Defendant into revealing its business practices to Plaintiff in advance of litigation. *See id.* at 11. Alternatively, Defendant argues that the sale may have been an *ex parte* communication if counsel represented Plaintiff at the time. Defendant's claim regarding the contrived sale is baseless, as courts have held that similar practices are not unethical. *See Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 82 F. Supp. 2d 119, 122 (S.D.N.Y. 1999) (holding
(continued...)

cites no caselaw or specific facts to support its argument. *See id.*

The Court has found that Plaintiff has stated plausible claims; such a finding presupposes that Plaintiff performed due diligence regarding the validity of its claims before filing its complaint. Accordingly, the Court denies Defendant's motion for sanctions.

Furthermore, the Court takes issue with Defendant's repeated and baseless requests for sanctions against Plaintiff. Rule 11 sanctions are reserved for instances where, unlike here, "it is patently clear that a claim has absolutely no chance of success[.]" *Eastway Constr. Corp. v. City of N.Y.*, 762 F.2d 243, 254 (2d Cir. 1985). "Courts have cautioned litigants that Rule 11 sanctions are reserved for extraordinary circumstances." *Park v. Seoul Broad. Sys. Co.*, No. 05 CV 8956, 2008 WL 619034, *1 (S.D.N.Y. Mar. 6, 2008) (citing *Morristown Daily Record, Inc. v. Graphic Commc'ns*, 832 F.2d 31, 32 n.1 (3d Cir. 1987)). Moreover, courts have cautioned parties that they should accompany any requests for sanctions with specific grounds for imposing those sanctions. *See SK Hand Tool Corp. v. Dresser Indus., Inc.*, 852 F.2d 936, 946 (7th Cir. 1988).

Courts have held that frivolous, unfounded motions for sanctions may themselves be sanctionable. *See Aircraft Trading & Svcs., Inc. v. Braniff, Inc.*, 819 F.2d 1227, 1236 (2d Cir. 1987) (reminding counsel that repeated unfounded requests for sanctions against a party filing a clearly meritorious appeal are sanctionable); *Gen. Elec. Co. v. Speicher*, 877 F.2d 531, 538 (7th Cir. 1989) (holding that a motion for sanctions for filing a frivolous appeal was sanctionable where the

---

[7](...continued)
that "hiring investigators to pose as consumers [for the purposes of evidence-gathering] is an accepted investigative technique" and does not run afoul of the New York Rules of Professional Conduct). Furthermore, Defendant has adduced no facts to indicate that Plaintiff knew Defendant was represented by counsel at the time it ordered Defendant's PRCD services. More importantly, because there was no lawsuit between Plaintiff and Defendant at the time of the order, it could not have been an *ex parte* communication because there was no case to discuss.

appeal was not frivolous (citation omitted)); *Meeks v. Jewel Cos., Inc.*, 845 F.2d 1421, 1422 (7th Cir. 1988) (holding that "sanctions [would] be forthcoming if counsel routinely request[ed] Rule 38 sanctions without careful investigation to determine that the appeal or defense sought to be sanctioned is indeed frivolous" (citation omitted)).

A court may initiate a sanction proceeding *sua sponte* by issuing a show-cause order. *See In re Pennie & Edmonds LLP*, 323 F.3d 86, 89 (2d Cir. 2003). When courts act pursuant to their own powers to issue contempt sanctions to an attorney, "a finding of bad faith on the part of the attorney is essential to a finding of contempt." *Id.* at 90 (citation and footnote omitted).

Here, Defendant's repeated requests for sanctions are themselves sanctionable. At one point in this litigation, Defendant asked three times in the span of one month for the Court to sanction Plaintiff for bringing its complaint. *See* Dkt. No. 17, Exhibit "1" attached thereto, at 9; Dkt. No. 19 at 11-12; Dkt. No. 23, at 7. Then, Defendant used its supplemental brief, which was intended as an opportunity to comment on Judge Suddaby's decision only, as a platform to ask once again for Rule 11 sanctions. *See* Dkt. No. 30 at 12-13.[8]

All of these requests have been procedurally improper and baseless. Defendant has not prepared a separate motion, let alone given Plaintiff a twenty-one day safe harbor period, both of which are required to seek sanctions under Rule 11(c)(2). *See* Fed. R. Civ. P. 11. Defendant instead asks the Court to impose sanctions under Rule 11(c)(3). *See* Dkt. No. 17, Exhibit "1" attached thereto, at 9. Defendant's request ignores both the fact that Rule 11(c)(2) provides the

---

[8] Since Mr. Brufsky submitted the supplemental brief, the Court considered striking it. However, even without considering Mr. Brufsky's submission, the Court finds that Defendant's other three requests for sanctions, which James L. Rogers, Esq. submitted, are sanctionable on their own.

proper means for one party to seek sanctions against another and the fact that courts typically issue orders to show cause under Rule 11(c)(3) only for egregious violations of Rule 11(b). Defendant does not allege facts to indicate such a glaring violation here. *See* Dkt. No. 17, Exhibit "1" attached thereto, at 9; Dkt. No. 19 at 11-12; Dkt. No. 23, at 7; Dkt. No. 30 at 12-13.

Accordingly, for all these reasons, the Court instructs Defendant's counsel, James L. Rogers, Esq., to show cause why the Court should not sanction him for filing these repeated, and baseless, motions for sanctions.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and oral arguments, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion for judgment on the pleadings is **DENIED**; and the Court further

**ORDERS** that Defendant's motion for sanctions against Plaintiff pursuant to Federal Rule of Civil Procedure 11 is **DENIED**; and the Court further

**ORDERS** that, within fifteen days of the date of this Memorandum-Decision and Order, Defendant's counsel, Mr. James L. Rogers, Esq., shall file a letter brief, not to exceed five pages, demonstrating why the Court should not sanction him for his multiple and meritless requests for sanctions in this matter; and the Court further

**ORDERS** that this case is referred to Magistrate Judge Peebles for all further pretrial matters.

**IT IS SO ORDERED**.

Syracuse, New York
May 23, 2011

Frederick J. Scullin, Jr.
Senior United States District Court Judge