**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**OPTIGEN, LLC,**

                                             **Plaintiff,**

          v.                                           **5:10-CV-940**
                                                        **(FJS/DEP)**

**ANIMAL GENETICS, INC.,**

                                          **Defendant.**
_____

**APPEARANCES**                                      **OF COUNSEL**

**HODGSON RUSS LLP**                   **ROBERT J. LANE, JR., ESQ.**
The Guaranty Building                  **JODYANN GALVIN, ESQ.**
140 Pearl Street, Suite 100           **MELISSA N. SUBJECK, ESQ.**
Buffalo, New York 14202-4040
Attorneys for Plaintiff

**ROGERS IP GROUP**                    **JAMES L. ROGERS, ESQ.**
Church Street Station
P.O. Box 3115
New York, New York 10008-3115
Attorneys for Defendant

**ALLEN D. BRUFSKY, PA**              **ALLEN D. BRUFSKY, ESQ.**
475 Galleon Drive
Naples, Florida 34102
Attorneys for Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Currently before the Court is Plaintiff's motion to dismiss Defendant's counterclaims alleging antitrust violation/patent misuse and seeking a declaratory judgment as to the unenforceability of the patents at issue. Plaintiff also moves to strike Defendant's affirmative defense based on the alleged unenforceability of the patents at issue.

## II. BACKGROUND

This case arises from a dispute regarding the patents for a method of testing Progressive Rod-Cone Disease ("PRCD"), which is a hereditary retinal disease that leads to blindness in dogs. *See* Complaint at ¶ 6. The patents at issue concern methods identifying whether a dog is a genetic carrier of PRCD. *See id*. at ¶¶ 7-8. Plaintiff is the exclusive licensee of United States Patent No. 5,804,388 (the "388 patent"), entitled "Chromosome 9 and Progressive Rod-Cone Degeneration Disease Genetic Markers and Assays." *See id.* at ¶ 7. Cornell Research Foundation, Inc. is the assignee of the 388 patent. *See id*. Plaintiff is also the exclusive licensee of United States Patent No. 7,312,037 (the "037 patent"), entitled "Identification of the Gene and Mutation Responsible for Progressive Rod-Cone Degeneration in Dog and a Method for Testing Same." *See id.* at ¶ 8. Cornell Research Foundation, Inc. is the assignee of the 037 patent. *See id*.

Plaintiff is a limited liability company organized and existing under the laws of the State of New York, and it maintains its principal place of business in Ithaca, New York. *See id.* at ¶ 1. Defendant is a corporation organized and existing under the laws of the State of Florida, and it maintains a place of business in Tallahassee, Florida. *See id.* at ¶ 3. Plaintiff's business involves

testing for inherited diseases in dogs through DNA-based means. *See id.* at ¶ 2. Defendant offers services related to testing for genetic disorders in horses and dogs; these services include testing for PRCD. *See id.* at ¶ 10.

When customers order a genetic test, Defendant sends them a kit to obtain a DNA sample from their dog; after collecting the sample, the customers mail the samples to Defendant. *See* Complaint at ¶¶ 12-13. Defendant then notifies the customers of the test results by mail.[1] *See* Complaint ¶ 15, Dkt. No. 9 at 2.

Plaintiff commenced this action on August 3, 2010. *See* Dkt. No. 1. On November 11, 2010, Defendant filed its answer, in which it asserted two counterclaims. *See* Dkt. No. 9, at 4-5. In its first counterclaim, Defendant argued that it was entitled to a declaratory judgment stating that the 388 and 037 patents were unenforceable and that it was not currently infringing either patent. *See id.* at 4. In its second counterclaim, Defendant contended that Plaintiff had committed antitrust violations and had engaged in patent misuse. *See id.* at 5. Defendant also alleged several affirmative defenses in its answer, including the unenforceability of the 388 and 037 patents. *See* Dkt. No. 9 at 3.

On December 2, 2010, Plaintiff filed a motion to dismiss Defendant's counterclaims under Federal Rule of Civil Procedure 12(b)(6) and to strike Defendant's affirmative defense regarding unenforceability. *See* Dkt. No. 14. Defendant opposed that motion. *See* Dkt. No. 19. Plaintiff filed a reply in further support of its motion. *See* Dkt. No. 22.[2]

---

[1] Plaintiff alleged that Defendant notified its customers via email, as well. *See* Complaint at ¶ 15. Defendant denied this in its Answer. *See* Dkt. No. 9 at 2.

[2] The Court had scheduled oral argument regarding Plaintiff's motion for April 12, 2011.
(continued...)

**DISCUSSION**

A.   **Standard for a 12(b)(6) motion**

Federal Rule of Civil Procedure 8(a)(2) requires that complaints contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]  Fed. R. Civ. P. 8(a)(2).  The Supreme Court has interpreted this to mean that a plaintiff must present "the 'grounds' of his 'entitle[ment] to relief,'" which must include "more than labels and conclusions" and cannot consist of "a formulaic recitation of the elements of a cause of action[.]"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted).  Moreover, "'the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.'"  *Id*. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004)) (footnote omitted).  Consequently, any claim at the pleading stage must include "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of wrongdoing, or put differently, a pleading must allege "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 556, 570.

B.   **Defendant's counterclaim for antitrust violation**

In its second counterclaim, Defendant asserts that one or more or all of the allegedly

---

²(...continued)
However, on that date, the Court became aware of an issue regarding the failure of Allen Brufsky, one of Defendant's attorneys, to disclose certain pertinent information on his application to practice in this District.  Therefore, the Court did not hear oral argument and, instead, informed counsel that the Court would consider the motion based on the papers they had submitted.

infringing method steps that it performs occurs outside the United States. *See* Dkt. No. 9 at 5. Defendant further states that, since there can be no extraterritorial enforcement of the 037 and 388 patents under 35 U.S.C. § 271(f), Plaintiff's attempt to enforce these patents represents an improper attempt to extend the territorial reach of its patents. *See id.* Defendant avers that Plaintiff's infringement lawsuit against Defendant is an attempt to monopolize the market for testing for PRCD in dogs. *See id.*

Section 2 of the Sherman Act imposes liability on "[e]very person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations . . . ." 15 U.S.C. § 2. To state a claim for monopolization, a plaintiff must allege facts sufficient plausibly to support the proposition that the defendant both had monopoly power in the relevant market and that it acquired or maintained that power through anticompetitive conduct. *See Verizon Cmmc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004).

The Supreme Court has defined monopoly power as "the power to control prices or exclude competition." *United States v. E.L. du Pont de Nemours & Co.*, 351 U.S. 377, 391 (1956) (footnote omitted).[3] Unfortunately, "[t]he Second Circuit has yet to articulate a precise test for the 'predatory

---

[3] Different interpretations of *duPont* hold favor in different circuits. Some circuits have interpreted *duPont* to require a showing that the alleged monopolizer possessed both the power to control prices *and* to exclude competition, while others only require proof of either element. *Compare Tarabishi v. McAlester Reg'l Hosp.*, 951 F.2d 1558, 1567 (10th Cir. 1991) (holding that proof of monopoly power requires both elements (citations omitted)); *with Cont'l Cablevision of Ohio, Inc. v. Am. Elec. Power Co.*, 715 F.2d 1115, 1120 (6th Cir. 1983) (holding that a showing of monopoly power requires proof of either element). The Second Circuit has followed the Sixth Circuit's interpretation. *See PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 107 (2d Cir. 2002) (defining monopoly power as "'the power to control prices **or** exclude competition'" (quotation omitted)) (emphasis added).

or anticompetitive conduct' element[.]" *In re Visa Check/Mastermoney Antitrust Litig.*, No. 96-CV-5238, 2003 WL 1712568, *7 (E.D.N.Y. Apr. 1, 2003).[4] However, courts in both this District and in the Eastern District of New York have held that to make a showing of anticompetitive conduct, a party must "'demonstrate a precise harm [to competition] caused by defendants' activities.'" *Audell Petroleum Corp. v. Suburban Paraco Corp.*, 903 F. Supp. 364, 372 n.6 (E.D.N.Y. 1995) (quoting *Jim Forno's Continental Motors*, 649 F. Supp at 754).

The Supreme Court has characterized a patent as a limited monopoly and held that any attempt to extend the monopoly of a patent beyond its scope is an antitrust violation and patent misuse. *See Brulotte v. Thys Co.*, 379 U.S. 29, 31 (1964) (ruling that an attempt to extend the life of a patent beyond the time of the grant was a violation). Part of the scope of a United States Patent is that it cannot be enforced outside the United States. *See Deepsouth Packing Co., Inc. v. Laitram Corp.*, 406 U.S. 518, 531 (1972) (holding that the American "patent system makes no claim to extraterritorial effect").

Moreover, the Federal Circuit has held that an additional method of extending a patent beyond its scope occurs where the patent holder sues a party whose actions the patent holder knows are non-infringing. *See Loctite Corp. v. Ultraseal Ltd.*, 781 F.2d 861, 876-77 (Fed. Cir. 1985), *overruled on other grounds by Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059 (Fed. Cir. 1998). To show that an infringement suit is a "mere sham," a party "must prove that the suit

---

[4] Differences among the circuits exist regarding a test for what constitutes anticompetitive conduct. *Compare United States v. Microsoft Corp.*, 253 F.3d 34, 58-59 (D.C. Cir. 2001) (setting forth a four-part test for anticompetitive conduct under § 2 of the Sherman Act) *with Gen. Indus. Corp. v. Hartz Mountain Corp.*, 810 F.2d 795, 804 (8th Cir. 1987) (stating that "[a]nticompetitive conduct is conduct without legitimate business purpose that makes sense only because it eliminates competition" (citation omitted)).

was both *objectively* baseless and *subjectively* motivated by a desire to impose collateral, anti-competitive injury rather than to obtain a justifiable legal remedy." *Nobelpharma*, 141 F.3d at 1071 (citation omitted).

In the instant case, Defendant makes very few factual allegations. However, Defendant does allege that Plaintiff's lawsuit for patent infringement against Defendant is motivated by a desire to expand the scope of its patent. *See* Dkt. No. 9 at 5. Defendant also alleges that Plaintiff's suit is part of an overall pattern of litigation designed to expand the scope of Plaintiff's patent and reduce competition in the PRCD testing market. *See* Dkt. No. 19 at 9 (referring to Plaintiff's patent infringement suit against International Genetics, *Optigen v. InGen et al*, Nos. 5:09-CV-6, 5:09-CV-457, 2010 WL 1528511 (N.D.N.Y. Apr. 16, 2010)).[5] Although it only alleges one instance of anticompetitive conduct, Defendant has implied a precise harm that Plaintiff's alleged activities has created: a chilling of competition between Plaintiff and competitor companies that operate partially outside the United States. *See* Dkt. No. 9.

Although Defendant's claim relies on scant facts, Defendant has nevertheless set forth facts sufficient to state a plausible claim that Plaintiff had monopoly power and sought to extend it through anticompetitive infringement suits. *See Verizon Cmmc'ns, Inc.*, 540 U.S. at 407. Defendant will need to discover and allege more facts for this counterclaim to withstand a later motion for summary judgment. At this point, however, the Court finds that Defendant can plausibly support a claim for a Sherman Act violation and denies Plaintiff's motion to dismiss Defendant's

---

[5] The Court notes that, after Optigen filed its claim against InGen, it filed a second claim against InGen and and several other defendants, *see Optigen v. InGen*, 09-CV-457. By Order dated June 18, 2009, then-Magistrate Judge DiBianco consolidated the two actions, with the earlier-filed action becoming the lead action. *See Optigen v. InGen*, 09-CV-457, Dkt. No. 30.

second counterclaim to the extent that it alleges an antitrust violation.

### C.     Defendant's counterclaim for patent misuse

Defendant contends that, if Plaintiff's actions to protect its patents do not rise to the level of antitrust violations, they constitute the lesser violation of patent misuse.

The policy underlying patent misuse is "'to prevent a patentee from using the patent to obtain market benefit beyond that which inures in the statutory patent right.'" *Monsanto Co. v. McFarling*, 363 F.3d 1336, 1341 (Fed. Cir. 2004) (quotation omitted). The principal elements of a patent misuse claim are the "patentee's impermissible use of its patent to broaden the physical or temporal scope of its patent with an anti-competitive effect." *Marchon Eyewear, Inc. v. Tura LP*, No. 98 CV 1932, 2002 WL 31253199, *9 (E.D.N.Y. Sept. 30, 2002) (citation omitted). Bad faith and improper purpose are also elements of patent misuse. *See id*. (citing *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.*, 45 F.3d 1550, 1558 (Fed. Cir. 1995)) (other citation omitted).

In order to state a claim for patent misuse, a defendant cannot make bare conclusory statements; it must allege facts sufficient to provide the plaintiff with notice about the relevant events. *See Ortho-Tain, Inc. v. Rocky Mountain Orthodontics, Inc.*, No. 05 C 6656, 2007 WL 1238917, *3 (N.D. Ill. Apr. 25, 2007) (quotation omitted). A defendant cannot merely recite the elements of a claim for patent misuse "without alleging even general facts to support that claim." *Takeda Chem. Indus., Ltd. v. Alphapharm Pty., Ltd.*, No. 04 Civ. 1966, 2004 WL 1872707, *1 (S.D.N.Y. Aug. 19, 2004).

The Federal Circuit has opined that there is a distinction between conduct that represents a

violation of § 2 of the Sherman Act and that which represents patent misuse. *See Argus Chem. Corp. v. Fibre Glass-Evercoat Co., Inc.*, 812 F.2d 1381, 1387 (Fed. Cir. 1987) (Nies, J., filing additional views). In the additional views section of the court's decision in that case, Chief Judge Nies identified three types of patent misconduct: (1) misconduct that makes a patent unenforceable; (2) misconduct that makes a case "exceptional" such that a court may, in its discretion, award attorney's fees; and (3) fraudulent conduct that will support an antitrust claim. *See id.* Moreover, the difference between a Sherman Act violation and a showing of patent invalidity due to misuse is that a Sherman Act violation involves the perpetration of a "knowing and willful fraud." *Baxa Corp. v. McGaw, Inc.*, 996 F. Supp 1044, 1049 (D. Colo. 1997).

Here, Defendant's only factual allegation is that Plaintiff's lawsuit is part of an ongoing series of legal disputes designed to expand the scope of its patents. Again, Defendant refers only to one other lawsuit: Plaintiff's suit against International Genetics. Although Defendant does not actually use the term "bad faith" in its counterclaim, Defendant strongly implies that Plaintiff has acted in bad faith. *See* Dkt. No. 9. Based on these implications and factual allegations, it is plausible that the intent of Plaintiff's litigation is to expand the scope of the 037 and 388 patents and that this litigation has had an anti-competitive effect. *See Marchon Eyewear, Inc.* 2002 WL 31253199, at *9. Accordingly, despite Defendant's meager factual allegations, the Court denies Plaintiff's motion to dismiss Defendant's second counterclaim to the extent that it alleges a claim of patent misuse.

**D.     Defendant's counterclaim for declaratory judgment**

Under the Declaratory Judgment Act, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Supreme Court has stated that, in order for a court to issue a declaratory judgment, there must exist "'a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quotation and footnote omitted).

District courts are "not required to exercise declaratory judgment jurisdiction, but [they have] 'unique and substantial discretion' to decline that jurisdiction." *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1345 (Fed. Cir. 2005) (quoting *Wilton* [*v. Seven Falls Co.*], 515 U.S. [277,] 286, 115 S. Ct. 2137 [(1995)]) (other citation omitted). Nevertheless, "'[t]here must be well-founded reasons for declining to entertain a declaratory judgment action.'" *Id.* (quoting *Capo, Inc. v. Dioptics Med. Prods.*, 387 F.3d 1352, 1355 (Fed. Cir. 2004)) (other citations omitted). For example, such a reason surfaces where a declaratory judgment "'would not afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Id.* (quoting *BP Chems.* [*Ltd. v. Union Carbide Corp.*], 4 F.3d [975,] 981 [(Fed. Cir. 1993)]).

Courts often issue declaratory judgments in patent cases "'to provide the allegedly infringing party relief from uncertainty and delay regarding its legal rights'" when a patent holder indicates an intention to enforce its patent against it. *Elecs. for Imaging, Inc.*, 394 F.3d at 1346 (quoting *Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953, 956 (Fed. Cir. 1987)).

However, in the context of a patent case, grounds exist for dismissing a complaint seeking declaratory relief where a pleading has been filed that raises issues of fact regarding the patent's

-10-

validity. *See I-T-E Circuit Breaker Co. v. McGraw Elec. Co.*, 121 F. Supp. 435, 435 (E.D. Pa. 1954). In addition, a court may also reject declaratory judgment jurisdiction regarding a patent's validity where one party has already raised the issue of infringement in another proceeding. *See id*; *see also Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 185 (1952).[6]

In the instant matter, Plaintiff maintains that it is the exclusive licensee of both the 037 and 388 patents. *See* Complaint at ¶¶ 7-8. Defendant claims that the patents are invalid. *See* Dkt. No. 9 at 4, Dkt. No. 19 at 6. The parties make bare conclusory statements; they do not raise issues of fact regarding the validity of the patents because neither party asserts any facts to demonstrate the validity or invalidity of the patents. However, Plaintiff has already sued Defendant regarding the issue of infringement. *See* Dkt. No. 1. The Court must settle the issues of infringement and validity as part of Plaintiff's suit against Defendant, and a declaratory judgment would therefore not provide relief from the underlying uncertainty regarding the 388 and 037 patents. *See Elecs. for Imaging, Inc.*, 394 F.3d at 1345. Accordingly, the Court grants Plaintiff's motion to dismiss Defendant's counterclaim requesting a declaratory judgment.

**E.     Defendant's affirmative defense of unenforceability**

---

[6] In its memorandum, Defendant relies on *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83 (1993), for the proposition that the court should not invoke its discretion to decline declaratory judgment jurisdiction for reasons of judicial economy. *See* Dkt. No. 19 at 11. *Cardinal* states that declining to issue a declaratory judgment in a patent case would be against public interest because it would encourage the extended life of invalid patents. *See Cardinal*, 508 U.S. at 101-02. However, the *Cardinal* case is distinguishable from the instant one because that case involved the vacation of a declaratory judgment regarding patent validity after the determination regarding infringement of a patent. *See id*. at 89-90. Here, there has not yet been a determination regarding infringement of the patents; and the Court will have to make this decision as part of Plaintiff's suit against Defendant.

The standard to strike an affirmative defense is the same as that applicable to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Luvata Buffalo, Inc. v. Lombard Gen. Ins. Co. of Canada*, No. 08-CV-00034, 2010 WL 826583, *8 (W.D.N.Y. Mar. 4, 2010) (quotation omitted). The Federal Rules of Civil Procedure provide that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ.P. 9(b). Where a defendant cannot plead an affirmative defense of unenforceability with particularity, dismissal of the affirmative defense is appropriate. *See Optigen, LLC v. Int'l Genetics, Inc.*, No. 5:09-CV-6, Dkt. No. 181 at 7-8, 28 (N.D.N.Y. Mar. 8, 2011).

Regarding its affirmative defense of unenforceability, Defendant has alleged only that the instant matter and Plaintiff's one other lawsuit regarding these patents represent the type of patent misuse that would render Plaintiff's patents unenforceable. *See* Dkt. No. 9 at 18. Since Defendant makes more than a bare allegation that Plaintiff's instant suit renders its patents unenforceable, Defendant has stated just enough facts to support a plausible claim for that unenforceability due to patent misuse and unclean hands. Accordingly, the Court denies Plaintiff's motion to strike Defendant's affirmative defense of unenforceability.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion to dismiss Defendant's first counterclaim for a declaratory judgment is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's motion to dismiss Defendant's second counterclaim asserting an

antitrust violation and patent misuse is **DENIED**; and the Court further

     **ORDERS** that Plaintiff's motion to strike Defendant's affirmative defense of unenforceability is **DENIED**.

**IT IS SO ORDERED.**

Dated: May 23, 2011
Syracuse, New York

                                              Frederick J. Scullin, Jr.
                                              Senior United States District Court Judge